IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

WILLIAM HARRISON

VS.                                                            CIVIL ACTION NO. 1:12CV94-DAS

ASHI DIAMONDS, LLC

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On August 27, 2013, the court held a bench trial in this matter and considered the plaintiff's complaint and the defendant's counterclaim. The court, having heard and considered the evidence presented by the parties during trial, hereby enters the following findings of fact and conclusions of law:

## I. FINDINGS OF FACT

The plaintiff, Harrison, worked as a salesman for the defendant, Ashi, from 2005 until he quit on January 23, 2012. Ashi is a wholesale diamond broker in the State of New York, and Harrison sold for Ashi to retailers in Alabama, Mississippi, Tennessee, and Florida. The thrust of Harrison's claim concerns the specific amount of commissions owed to him at the time of his departure for sales made in 2012.[1] At trial, the plaintiff testified that when he left Ashi on January 23, 2012, he had total sales that month of $139,368.17. Harrison also explained that on that date he had returns of $1,712.15, leaving a net of $137,656.02. Because he worked on a 6% commission rate, he claimed Ashi owed him $8,259.36; that is, he claimed Ashi owed him his

---

[1] Initially, the parties disputed the amount owed Harrison in commissions for 2011, but prior to trial, the parties agreed Ashi owes Harrison $3,915.02 for that period.

1

commissions made as they would have been calculated on the day he left.[2]

Ashi's representative, Nilesh Shah, also testified. Shah explained that contrary to Harrison's position, Ashi paid its salesmen not based on a calculation done at the time they left but at a time subsequent to their departure. Specifically, Shah explained that Ashi calculated such commissions on a date four months following their departure. According to Shah, Ashi did this because once a salesman leaves, sales made shortly before his departure may not yet have been processed. As a result, a salesman may be credited for sales if calculated four months later that he would not have received on the date of departure. Also, returns of items sold just prior to a salesman's departure may not be processed until after he leaves. Those returns would be deducted from any sales total he had at the time of the calculation. Essentially, Ashi waits four months from the date of departure to make certain all transactions related to sales made by the departing salesman – both credits/sales and deductions/returns – have cleared. This can, of course, be to the benefit of a departing salesman just as it could be detrimental, but after hearing the testimony, the court finds Shah's explanation both reasonable and credible.

During trial, Harrison testified that Ashi's explanation was not accurate. Specifically, Harrison testified that when he began with Ashi, deductions related to returns of merchandise following the departure of his predecessor were actually taken from his own salary. He now argues that Ashi is trying to deduct the returns of the merchandise he sold in January 2012, but rather than deduct the returns from the salesman who replaced him, Ashi is again trying to deduct money from that owed to him. In support of this explanation, Harrison pointed to Plaintiff's

---

[2]The court notes that at the time of his departure Harrison owed Ashi $6,265.50 for jewelry he purchased personally. Neither this purchase nor the amount is disputed, and will be considered in the final calculation discussed *infra*.

2

Exhibit 10, specifically those pages with Bates stamped 0494 and 0502-506. Page 0404 is a document entitled "Sales Commission Summary For Bill Harrison: Aug 2005." Pages 0502-0506 appear to show numerous instances of sales recorded during years preceding March 2005, when Harrison began working for Ashi. Harrison pointed to these documents as evidence that Ashi calculated his pay at times utilizing events that took place long before he began working for them and that Ashi deducted from his salary returns made related to sales made by his predecessor.

Shah testified that this is possible but not likely. Shah explained that once the four-month period has passed, any returns made attributable to a salesman's predecessor will be deducted against the new salesman. Shah further explained, however, that this was balanced by the fact that once a salesman leaves, he will receive the benefits of sales processed up to four months after his departure. According to Shah, four months typically is time to clear any transactions made by departing salesman, and – again – the court finds Shah's testimony both clear and reasonable.

Harrison also attempted to discredit Ashi by pointing to a number of documents included in Plaintiff's Exhibit 8, including those Bates stamped 001469, 001486, 001498, 1504, and 1508. Referring to these documents, Harrison pointed out that while these documents made up the total of sales and returns for the period beginning in January 2102 and running through May 2012, they each referenced a salesman other than Harrison. Apparently, Harrison was attempting to show that Ashi's documents were incorrect because Harrison left their employ at the end of January 2012. However, Shah clearly and succinctly clarified the matter.

Shah explained (as discussed above) that sales and returns for a departed salesman will continue on the books for four months following his departure. Also, the documents to which Harrison referred showed the salesman assigned to the particular territory at the time the document was created. Consequently, when Ashi created the document following Harrison's departure, it

3

showed the salesman assigned to the territory despite the fact that the numbers reflected Harrison's sales and returns. It also is important to note that each of these documents also refers to Harrison, a fact Shah repeatedly attempted to point out during cross-examination.

One final fact that must be addressed concerns the defendant/counter-plaintiff's claim for conversion. At the time Harrison left Ashi's employ on January 23, 2012, he held in his possession merchandise that belonged to Ashi and valued at approximately $775,000. Despite attempts made by Ashi, Harrison did not return that merchandise until June 14, 2012. Once Harrison returned the items, Ashi claimed two pieces valued at a total of $2,647.00 were missing from their inventory. Harrison testified that not only did he return all the items he held, but also he returned many items not on Ashi's inventory valued at approximately $15,000. In support of this argument, Harrison admitted Plaintiff's Exhibit 6, showing numerous items added to the inventory and initialed by both Harrison and Ashi's representative, David Kowalski. Ashi did not refute this.

## II. CONCLUSIONS OF LAW

In his complaint Harrison alleged the following claims: (1) past due commissions; (2) negligent and/or intentional infliction of emotional distress; and (3) a claim for punitive damages. In its answer, Ashi filed a counterclaim and alleged: (1) conversion; and (2) a claim for punitive damages. The court will address each claim in turn.

### PLAINTIFF'S CLAIMS

*1. Past due commissions*

The nature of this claim is such that the findings of fact and the conclusions of law are virtually identical. That is, because the court finds Nilesh Shah's testimony to be the more reasonable and credible, it follows that the plaintiff's calculation for past due commissions fails, and the defendant's explanation prevails. Specifically, the court finds that Ashi owes to Harrison commission payments for 2012 of $4,293.31. That number represents a calculation based on sales made by Harrison and calculated at the end of the four-month period ended, in May 2012.

*2. Negligent and Intentional infliction of emotional distress*

To prove a claim for the negligent infliction of emotional distress, a plaintiff must prove first the elements of negligence: duty, breach, causation, and harm. *See Harried v. Forman Perry Watkins Krutz & Tardy*, 813 F. Supp. 2d 835, 841-42 (S.D. Miss. 2011) (citing *Blake v. Wilson* , 962 So. 2d 705, 715 (Miss. Ct. App. 2007)). Additionally to succeed on such a claim, a plaintiff must prove "some sort of physical manifestation of injury or demonstrable physical harm." *Wilson v. GMAC*, 883 So. 2d 56, 65 (Miss. 2004) (citing *American Bankers' Ins. Co. Of Fla. v. Wells*, 819 So. 2d 1196, 1209 (Miss. 2001)). During trial, Harrison and his wife testified related to the injury or harm caused by the alleged actions of Ashi. Both referred to Harrison's visits to an internist and a cardiologist, but that no objective tests showed anything out of the ordinary. Moreover, the claims at issue are nothing more than a dispute over a relatively small amount. These claims are hardly the stuff to cause demonstrable physical harm.

Of course a claim for intentional infliction of emotional distress requires even more than that for the negligent infliction of emotional distress. The Fifth Circuit has noted how difficult it can be to prove a claim for intentional infliction of emotional distress in Mississippi. In *Haun v. Ideal Indus., Inc.,* the court wrote:

> It is difficult to prove intentional infliction of emotional distress: It has

> not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been *so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.*

*Haun v. Ideal Indus., Inc.*, 81 F.3d 541, 548 (5th Cir. 1996) (emphasis in original).

In the present case, the plaintiff points to the commissions calculated for 2012 and argues this behavior supports his claim for intentional infliction of emotional distress.[3] Obviously, because the court finds the calculations made by Ashi to be the appropriate ones, neither a claim for intentional nor negligent infliction of emotional distress may lie.

Because the court finds Harrison has only a claim for $4,293.31 and because the court finds Ashi acted reasonably when it withheld that payment so long as Harrison retained approximately $775,000.00 worth of merchandise, punitive damages certainly do not apply. In the end, this is simply a contract action, and the facts do not support an award of punitive damages. *See Seay v. Southern Life and Health Ins. Co.*, 660 F. Supp. 1076, 1080 (S.D. Miss. 1986) ("[P]unitive damages are not recoverable for breach of contract unless such breach is attended by some intentional wrong, insult, abuse, or gross negligence which amounts to an independent tort.") (quoting *Standard Life Ins. Co. Of Indiana v. Veal*, 354 So. 2d 239, 247 (Miss. 1978)).

## **DEFENDANT/COUNTER-PLAINTIFF'S COUNTERCLAIMS**

*1. Conversion*

---

[3]The plaintiff may also have considered other acts allegedly committed by Ashi to support his claims for intentional and/or negligent infliction of emotional distress. However, many of those acts were the subject of a motion to strike the court granted prior to trial.

In Mississippi, "[t]o make out a conversion, there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand." *First Investors Corp. v. Rayner*, 738 So. 2d 228, 234-35 (Miss. 1999) (quoting *McJunkin v. Hancock*, 176 P. 740 1918)). The measure of damages in a conversion action is the value of the property at the time and place of the conversion. *West v. Combs*, 642 So. 2d 917, 921 (Miss. 1994). "Damages resulting from a conversion that are not ordinary, usual, or commonly to be expected, are [also] recoverable so long as the parties in question have those effects in contemplation at the time of the wrong as the probable result." *Cmty. Bank v. Courtney*, 884 So. 2d 767, 775 (Miss. 2004). "Punitive or exemplary damages may be awarded for the conversion of another's property if there is evidence of acts which are willful, wrong, malicious, or oppressive." *West*, 642 So. 2d at 921.

In the present action, Ashi seeks damages because it claims Harrison wrongfully withheld (converted) its property from the time he quit until June 14, 2012. Specifically, Ashi claims Harrison retained Ashi's merchandise valued at approximately $750,000 and held it as "ransom" until Ashi paid to him the commission he claimed he was owed. Ashi claims that as a result, it suffered damages for: (1) two items not returned, valued at $2,647.00; (2) lost profits; and (3) insurance premiums paid on the items Harrison held. Ashi also asks for punitive damages.

As to the items not returned, the court finds that while Nilesh Shah testified that the items were not returned, his testimony as to this issue was less than clear. Indeed, Shah changed his initial testimony that Harrison did not return four items to his later testimony that Ashi sought only two items. Shah also testified that Ashi did not send its agent, David Kowalski, down with an inventory of items. However, Harrison introduced the inventory into evidence as Plaintiff's Exhibit 3 with Harrison and Kowalski initialing items returned by Harrison and not recognized by

7

Ashi. As noted, Harrison claimed those items were worth approximately $15,000.00, and this was not disputed. Because it appears Harrison returned far more than the items listed on the inventory, and because Shah's testimony was less than clear on this point, the court finds Harrison is not liable for the $2,647.00 sought.

As to Ashi's claim for lost profits, Shah described how Ashi arrived at the amount sought – $60,000. Essentially, Ashi calculated what Harrison's replacement sold during the period at issue and compared that to Harrison's sales from the previous year during that same time period. While Shah went into slightly more detail, his calculations were so speculative that the court sees no need to elaborate. Moreover, Shah testified that these calculations had been done only the week prior to trial. For both of these reasons, the court finds Harrison is not liable for the $60,000 sought.

Next, Ashi claims Harrison owes it the $350.00 per month it paid in insurance premiums while he allegedly wrongfully withheld the merchandise. As Harrison points out, however, Ashi would have paid premiums on that merchandise even had he returned it in January. In response, Ashi argues that it paid premiums on the merchandise Harrison's replacement carried during the period at issue, and had Harrison not withheld the merchandise, both premiums would not have been necessary. The court understands the argument, but the amount is again too speculative to consider. While a single premium may well have been less had Harrison returned the items, there was no proof as to how much less, and the court is unwilling to speculate and award a number without more proof.

Finally, as discussed more extensively *supra*, punitive damages are awarded only when a plaintiff proves the party against whom the damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or

8

committed actual fraud. Here, while Ashi claimed Harrison withheld the items at issue as "ransom" for the commissions he claimed Ashi owed him, the proof of such was minimal. Moreover, there was nothing to indicate any resistance on Harrison's part when Ashi sent Kowalski down to go over the inventory sheet with him. While conversion may have occurred, the court sees no need to make such a determination because no damages were shown. With such slight evidence as to conversion and no damages shown, the court finds that punitive damages are far from appropriate.

### III.  CONCLUSION

Accordingly, based on the findings of fact and conclusions of law stated herein, the court finds that Harrison is owed $4,293.31 in past due commissions. The court further finds that Harrison failed to prove either a claim for negligent infliction of emotional distress or intentional infliction of emotional distress, and his claim for past due commissions do not warrant the imposition of punitive damages.

The court finds that Ashi failed to prove any damages in support of its claim for conversion, and that the facts shown to support such a claim do not warrant the imposition of punitive damages.

A judgment consistent with these findings of fact and conclusions of law will be entered accordingly.

This the 3rd day of December, 2013.

/s/ David A. Sanders  
UNITED STATES MAGISTRATE JUDGE